UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHNEL DUNLAP, | |
| Petitioner, | Civ. No. 20-219 (KM) |
| v. | **OPINION** |
| JAMES SLAUGHTER, | |
| Respondent. | |

**KEVIN MCNULTY, U.S.D.J.**

  Pro se petitioner Johnel Dunlap, a state prisoner at East Jersey State Prison in Rahway, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. DE 1. For the reasons below, the petition is denied and a certificate of appealability shall not issue.

**I. BACKGROUND**

  **A. Factual Background**[1]

  Dunlap's conviction arises out of his leadership role in a heroin conspiracy. *State v. Dunlap*, No. A-0329-13T1, 2016 WL 207616, at *1 (N.J. Super. Ct. App. Div. Jan. 19, 2016). On direct appeal, the New Jersey Superior Court Appellate Division summarized Dunlap and his co-defendants' criminal proceedings and the evidence underlying their convictions as follows:

> This case had its origin in an investigation into the heroin trafficking activities of Jose Maldonado in Somerset County. After a confidential informant disclosed prior purchases of heroin from Maldonado, an undercover detective purchased fifty bags of heroin from Maldonado on five different occasions during the period from October 2009 to January 2010. . . . Maldonado drove to each transaction in a 1993 white Honda Accord . . . . In January 2010, [an order was issued authorizing] the interception of communications and data for Maldonado's cell phone and the installation of a GPS unit on the white Honda Accord.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court defers to the factual determinations of the State court.

> Conversations intercepted thereafter revealed that Maldonado had two principal sources for heroin. One was Tehron Luster. The second source was the partnership of defendants Newbill and Bates. During the course of their investigation, detectives observed meetings between Maldonado and both Luster and Newbill. Orders authorizing the interception of communications and data from the cellphones used by Luster and Newbill were issued in February 2010 and extended thereafter. Describing intercepted communications and coordinated surveillance through the lens of their experience, affiants later submitted affidavits in support of applications for the interception of communications and data over cellphones used by Dunlap and Mosley. Orders authorizing such interceptions were entered.
>
> The investigation came to fruition in late March 2010. A search warrant was issued for a 1997 white Chrysler minivan registered to Dunlap . . . on March 24 at 3:35 p.m. When the search warrant was executed on March 26 from 9:55 a.m. until 3:00 p.m., fifteen bricks of heroin were recovered from the rear wheel well of the passenger side quarter panel of the minivan and wads of cash totaling $25,007 were found inside a black laptop bag. These seizures formed part of the basis for affidavits seeking search warrants for a 2004 blue Infiniti G35 registered to Dunlap . . . and a green Honda Civic registered to M.H. The warrants for those automobiles were issued at 4:00 p.m. and executed fifteen minutes later. No property was recovered from the Honda. The search of the Infiniti resulted in the seizure of 551 bricks of heroin in three separate bags, a 9 mm Smith and Wesson handgun containing ten rounds of ammunition, and a piece of paper with Mosley's name and heroin stamp names written on it.
>
> Dunlap's residence on South Park Street in Elizabeth was searched pursuant to a search warrant, resulting in the recovery of $9,060 and fourteen decks, or approximately 2.8 bricks, of heroin. Search warrants executed at residences on Mitchell Avenue and Lawrence Street in New Brunswick resulted in the seizures of 34.4 bricks of heroin and 12.8 bricks of heroin, respectively.

*Dunlap*, 2016 WL 207616, at *1–2 (footnotes omitted). Dunlap was charged with numerous counts related to heroin possession and distribution, as well as weapons charges.[2] *Dunlap*, 2016 WL 207616, at *4.

---

[2] Specifically, Dunlap was charged with second-degree conspiracy to distribute heroin, first-degree leading a narcotics trafficking network, first-degree possession with intent to distribute heroin, first-degree distribution of heroin, two counts of third-degree possession of heroin, first-degree possession with intent to distribute heroin, third-degree financial facilitation of criminal activity, third-degree receiving stolen property, second-degree possession of a handgun without a permit, and second-degree possession of a firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of the statute making unlawful the manufacture, distribution, or possession with intent to manufacture or distribute a controlled dangerous substance. *Dunlap*, 2016 WL 207616, at *4. He was also charged in a separate indictment with one count of second-degree certain persons not to have weapons. *Id.*

Richard Roberts, who began representing Dunlap in July 2011, DE 13-1 at 17, moved to dismiss the indictment and to suppress evidence seized from the three cars. *State v. Dunlap*, No. A-0395-17T3, 2018 WL 6816662, at *1 (N.J. Super. Ct. App. Div. Dec. 28, 2018); DE 11-12 (decision denying motions). After the trial court denied those motions, Dunlap became dissatisfied with Roberts and, approximately one month before the scheduled trial date, retained Kenyatta Stewart. DE 11-12. The trial court would not relieve Roberts, but allowed Stewart to appear as co-counsel. *Id.* At a pretrial conference on September 21, 2012, the court also "made clear that [Dunlap's]'s attorneys were free to file a motion to reopen the suppression hearing if new evidence was obtained." *Id*. However, "[d]espite that opportunity, neither Roberts nor Stewart filed any motions and instead, Stewart negotiated [a] plea agreement with the State that led to [Dunlap] pleading guilty" on September 27, 2012. *Id*.

Dunlap pled guilty to one first-degree offense (leading a narcotics trafficking network) and one second-degree offense (certain persons not to possess weapons). *Id.*; DE 12-4 (judgment of conviction). The State agreed to recommend that Dunlap's sentence on the first-degree crime be limited to 30 years of imprisonment with 15 years of parole ineligibility, concurrent to 10 years of imprisonment with 5 years of parole ineligibility on the second-degree crime. *Dunlap*, 2016 WL 207616, at *4. Pursuant to the agreement, Dunlap waived his right to appeal the denial of all pretrial motions except the motion to suppress. DE 12-2 at 1.

**B.  Procedural History**

In November 2012, Dunlap was sentenced in accordance with the plea agreement to an aggregate term of 30 years in prison with a 15-year period of parole ineligibility. *Id.* at 1. The Appellate Division affirmed in January 2016, *Dunlap*, 2016 WL 207616, and certification was denied in July 2016, *State v. Dunlap*, 150 A.3d 409 (N.J. 2016). Dunlap petitioned for post-

conviction relief ("PCR"), which the PCR court denied without a hearing in August 2017. *Dunlap*, 2018 WL 6816662, at *3. The Appellate Division affirmed in December 2018, *id.* at *4, and certification was denied in July 2019, *State v. Dunlap*, 238 A.3d 182 (N.J. 2019).

Dunlap filed this petition in January 2020, asserting the following ground for relief: "The State court's ruling that petitioner was not subjected to the constructive denial of counsel at his pretrial suppression hearing and motion to dismiss the indictment, and his Sixth Amendment constitutional right to effective assistance of counsel[,] was contrary to clearly established federal law, and an unreasonable determination of facts." DE 1-2 at 2 (capitalization omitted). The State answered the petition in September 2020 (DE 9–15), and Dunlap did not file a reply (DE 17). This matter is therefore fully submitted and ready for decision.

## II. LEGAL STANDARD

The district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner must establish entitlement to relief for each claim in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts must be "highly deferential" to the determinations of state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These deferential standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

### III.   DISCUSSION

I liberally construe Dunlop's petition (DE 1) and supporting facts (DE 1-2) as asserting a claim that Roberts's assistance was ineffective in four respects: (1) failure to call two witnesses at the suppression hearing (*id.* at 6–10, 14), (2) failure to move to reopen the suppression hearing (*id.* at 11–15), (3) failure to preserve a right to challenge the denial of his motion to dismiss the indictment (*id.* at 15–16), and (4) failure to challenge the sufficiency of evidence supporting the charge of being a leader of a narcotics trafficking organization (*id.* at 2–6, 14). For the reasons state below, Dunlap's arguments are without merit.

A. **State Court Decisions**

Dunlap argued on direct appeal, *inter alia*, that the trial court erred in dismissing his motion to dismiss the indictment and that counsel was ineffective for failing to subpoena witnesses in support of a suppression motion. The Appellate Division declined to consider the motion to dismiss the indictment, finding that he waived the right to challenge the denial of that motion in his plea agreement and thus failed to preserve the issue for appeal. *Dunlap*, 2016 WL 207616, at *3. As to the ineffective assistance of counsel argument, the court found that Dunlap failed to present a prima facie case:

> Dunlap . . . alleges the Infiniti and Honda were searched by the police before a search warrant was obtained. He contends that trial counsel failed to subpoena two witnesses, L.E.G. and R.F., to support a suppression motion on that basis. He has included transcripts of statements taken from these witnesses in December 2011.[3]
>
> According to counsel's argument in the trial court, L.E.G. and R.F. were included on the defense witness list that was provided to the State. The record reveals that counsel did make efforts, albeit unsuccessful, to produce these witnesses for the suppression hearing. The suppression hearing was conducted over two days, January 19, 2012 and May 23, 2012. On the latter day, defense counsel advised the court his office had contacted two witnesses who provided information that contradicted the testimony of the police witness as to the search of the automobiles. He then stated:
>
>> [COUNSEL]: For whatever reason, and I'm trying to find out, their story has changed. I believed on information and belief that they were approached and questioned by members—I don't know if it was the Prosecutor, what they indicated, it was police people who questioned them. *They are ducking my subpoena.*
>>
>> I would ask the Court most respectfully—I don't know the answer to the questions I'm raising, but their questions, in fairness to Mr. Dunlap, I have to investigate.
>>
>> THE COURT: Okay.

---

[3] It appears from the transcripts that the statements were taken in November 2011. *See* DE 12-12 at 172 (R.F. statement taken on November 27, 2011), 175 (L.E.G. statement taken November 4, 2011). The transcripts, however, are dated December 5, 2011. *Id*.

> [COUNSEL]: I would ask respectfully to allow me some time to, once again, speak to these people. I didn't speak to them myself. My Detective did at one point.

[Emphasis added.]

Upon inquiry from the court, counsel stated, "My information was that the vehicles, plural, was [sic] searched prior to obtaining the search warrants." The prosecutor acknowledged receiving transcripts of the witnesses' statements to the defense investigator in January 2012. The court asked counsel if he was alleging the prosecutor's investigators had intimidated the witnesses. Counsel responded:

> Judge, all I'm telling you is I can't get the witnesses. I don't know if it was Prosecutors, they said law enforcement . . . went up to them and spoke to them about the case, I guess their statements . . . . As a result of what they were told by these people, they ain't coming around here.

The assistant prosecutor represented to the court that she had asked the investigator to "run the rap sheets" for the witnesses, but that she had not asked an investigator to interview them and did not believe any investigator had done so. Counsel persisted in his request for an adjournment of "a couple of weeks" to locate the witnesses and repeated that they had been "ducking" efforts to subpoena them. Although the trial judge denied this request, he advised counsel he could renew the motion for a continuance and receive additional time to locate the witnesses if he presented more specific testimony from his investigator that afternoon.

During the lunch recess, trial counsel sent an investigator, who was able to speak to one of the witnesses. He reported to the court that the witness "was not very happy with cooperating" and was not subpoenaed; counsel requested an opportunity to speak to the witness himself and represented he could report back to the court in a week. Counsel advised that he had no contact with the second witness. The court denied the motion, but stated the denial was subject to reopening "based upon a further investigation and affidavits from these parties." . . .

. . . The record . . . shows that trial counsel attempted to secure the testimony of the witnesses described by defendant for the suppression hearing, that he requested additional time to speak to the one witness located to determine whether to subpoena him and recognized that, in light of the witness's unwillingness, a strategic decision was required as to whether to subpoena him.

Ordinarily, a claim of ineffective assistance of counsel is best presented within the context of a petition for post-conviction relief because it relies upon information that is not contained in the record. *State v. Preciose*, 129 N.J. 451, 460 (1992). . . .

> Defendant contends the record is sufficient for us to decide his ineffective assistance claim. To present a prima facie case, he was required to establish (l) counsel's performance was deficient and he made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Fritz*, l05 N.J. 42, 52 (l987).
>
> To the extent that defendant relies upon the facts in the record before us, we are satisfied that defendant's proof of the first prong fails, particularly in light of the strategic decision that faced trial counsel. "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial." *State v. Castagna,* 187 N.J. 293, 314–15 (2006) (citation omitted). To the extent defendant's argument rests upon information outside the record, it is best reserved for a petition for post-conviction relief.

*Dunlap*, 2016 WL 207616, at *7–8 (brackets in original); *see also* DE 12-12 at 172–79 (transcripts of R.F. and L.E.G. statements).

In collateral proceedings, Dunlap argued that counsel was ineffective for failing to (1) preserve Dunlap's right to appeal the motion to dismiss the indictment, (2) challenge the sufficiency of the evidence presented on the leader charge, (3) produce witnesses, and (4) reopen the suppression hearing. DE 12-2 at 40–61. The PCR judge found that these claims had been addressed on direct review and therefore were procedurally barred on PCR, and ruled in the alternative that they would fail on the merits. *Dunlap*, 2018 WL 6816662, at *2; DE 13 at 13–17.

Affirming that PCR decision, the Appellate Division reviewed the evidence and the PCR judge's analysis as follows:

> Defendant submitted a certification in support of his petition in which he described what he understood to be the content of statements given to an investigator by the two witnesses that Roberts did not call at the suppression hearing. He also explained how he provided Roberts with his automobile toll

8

records that contradicted the State's witnesses and which Roberts did not use at the hearing.[4]

Defendant argued that by not calling the witnesses or obtaining certifications from them and moving to reopen the suppression hearing, or using the toll records, defendant was "deprived of a viable defense to the evidence illegally obtained without a search warrant." Defendant explained that Roberts' failure to do so led to his dissatisfaction with counsel and his hiring of Stewart. He also cited to Robert's being ineffective in pursuing the motion to dismiss the indictment.

Stewart also submitted a certification in support of defendant's petition. In his certification, Stewart advised that he became defendant's attorney on August 12, 2012, and at the time of the plea hearing, he and Roberts represented defendant together, although only Roberts appeared at the hearing. He described defendant's complaints about Roberts as set forth in defendant's certification and added an allegation that defendant did not raise concerning Roberts not visiting defendant in jail to discuss the case. Contrary to the record of the September 21, 2012 pre-trial conference, Stewart stated that when he entered the case, the trial court would not let him file any motions. Stewart contended that Roberts admitted that he "messed up" in not producing the witnesses at the suppression hearing and that Roberts did not "review the thousands of documents" Roberts obtained from the prosecutor through discovery.

In opposition to defendant's petition, the State filed the certification of Christine M. D'Elia, the assistant prosecutor responsible for defendant's prosecution. In her certification, D'Elia stated that at the time of defendant's plea, the State would not have agreed to a reservation of rights in defendant's plea agreement as to any issue other than the denial of his suppression motion. She also stated that at the time of the scheduled trial, if defendant was convicted, he was facing a sentence of up to life in prison with a twenty-five year period of parole ineligibility on one

---

[4] The issue relating to the toll records is not before me, as Dunlap does not raise it in his habeas petition. It is not referenced in the ground for relief specified in his petition or anywhere in the 18 pages of "supporting facts" attached to the petition. DE 1; DE 1-2 at 2–19. Further, on collateral appeal, the Appellate Division (1) "view[ed] [Dunlap's] allegation that Roberts failed to utilize EZ Pass violation records to show the duration of the search of the two vehicles lasted longer than the State's investigation suggested to be subsumed by his contentions on direct appeal" and (2) "to the extent the claim was not raised on direct appeal," found it was procedurally barred under N.J. Ct. Rule 3:22-4 because it could have been raised on direct appeal and Dunlap "cannot demonstrate that a failure to use the records played a role in the determination of guilt." *Dunlap*, 2018 WL 6816662, at *4 (N.J. Super. Ct. App. Div. Dec. 28, 2018) (quoting *State v. Brewster*, 429 N.J. Super. 387, 400-01 (App. Div. 2013)). Accordingly, even if Dunlap intended to raise this issue in his habeas petition, he is barred from doing so unless he demonstrates cause and actual prejudice for the default. *Sayers v. Davis*, No. CV 19-239, 2022 WL 1664502, at *8 (D.N.J. May 24, 2022) ("A habeas petitioner may only obtain relief on a claim which has been procedurally barred by . . . a state court ground where he either shows cause and actual prejudice for the default, or that he is actually innocent of the crime for which he was convicted.") (citing *Dretke v. Haley*, 541 U.S. 386, 393 (2004)). He has not done so here.

> of the charges and, in response to being "urged" by Stewart, she agreed to the plea arrangement that led to defendant's guilty plea.
>
> . . .
>
> Although Judge Jimenez concluded defendant's claims were procedurally barred, he addressed the merits of defendant's allegations of IAC. The judge concluded that defendant failed to establish a prima facie claim that Roberts committed any "serious error[ ]" when he made "a strategical decision" to not call the two "possibly unreliable witnesses" at the suppression hearing, which Stewart never attempted to cure if defendant truly viewed it as an error. Moreover, the judge concluded that even if errors were made, defendant also failed to establish that he would not have pled guilty absent counsel's alleged deficiencies.
>
> In discussing the information filed in support of defendant's petition, Judge Jimenez observed that the only new evidence of alleged IAC by Roberts advanced by defendant since his appeal was Stewart's certification. The judge concluded from the certification that Stewart was aware of the facts argued by defendant in support of his IAC claim in his earlier appeal and now again on PCR. He observed that despite that knowledge, Stewart never took any action to remedy Roberts' alleged deficiencies, such as filing a motion to reopen the suppression hearing, but instead pursued negotiating a plea agreement for defendant. Judge Jimenez inferred that Stewart shared Roberts' view that the "two (2) witnesses were not credible enough to take the stand," and for that reason, "never petitioned the court to reopen the motion."
>
> Under those circumstances, the judge concluded that Stewart's decision to not file any motions undermined defendant's argument that Roberts was ineffective or that defendant would not have pled guilty if the motion was made. Accordingly, the judge found that not only were defendant's PCR claims procedurally barred, defendant also failed to "present a prima facie case" of IAC.

*Dunlap*, 2018 WL 6816662, at *2–3; *see also* DE 13 (decision denying PCR petition); DE 12-12 at 252–56 (Dunlap certification); DE 14-1 at 24–25 (Stewart certification); DE 12-14 (D'Elia certification).

The Appellate Division then affirmed "substantially for the reasons expressed by Judge Jimenez in his thorough decision." *Dunlap*, 2018 WL 6816662, at *4. The court agreed with Judge Jimenez that Dunlap failed to satisfy either prong under *Strickland*:

> We agree that defendant failed to establish that Roberts' performance was deficient and that he committed any egregious errors. Even if he did, we also conclude that defendant did not make a prima facie showing that, but for

10

> counsel's errors, he would not have pled guilty. The record clearly indicates that, despite the State's evidence against defendant, Stewart was able to negotiate a favorable plea for defendant. Specifically, under N.J.S.A. 2C:35-3, if convicted, defendant was facing a mandatory sentence of life imprisonment with twenty-five years of parole ineligibility. Only through a plea agreement could the mandatory sentence be waived. *See* N.J.S.A. 2C:35-12. Therefore, defendant's ability to plead guilty and to be sentenced to thirty years with fifteen years of parole ineligibility was in all respects a highly beneficial result for defendant. Nothing in the record suggests that he would have preferred to go to trial and face the mandatory life sentence or that he would have chosen to do so but for Roberts' deficiencies.
>
> Because we are satisfied that defendant failed to make a prima facie showing of ineffectiveness of counsel within the *Strickland-Fritz* test, we also find that Judge Jimenez correctly concluded that an evidentiary hearing was not warranted. *See State v. Jones*, 219 N.J. 298, 311 (2014).

*Dunlap*, 2018 WL 6816662, at *4–5.

### B. Analysis

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see Strickland*, 466 U.S. at 686. A claim of ineffective assistance has two necessary components. *Id*. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. Second, a defendant must establish prejudice. *Id.* at 687. To establish prejudice in the context of a guilty plea, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). In other words, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697).

11

On habeas review, it is not enough that a federal judge would have found counsel ineffective; the judge must also find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Smith v. Bonds*, No. CV 15-6437, 2018 WL 2972671, at *5–6 (D.N.J. June 12, 2018) ("the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable, which is different from asking whether defense counsel's performance fell below *Strickland*'s standard") (quoting *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013); cleaned up). "And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that 'advocacy is an art and not a science, and . . . strategic choices must be respected in these circumstances if they are based on professional judgment.'" *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022) (quoting *Strickland*, 466 U.S. at 681). In other words, "counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006); *see also Lesko v. Sec'y Pa. Dep't of Corr.*, 34 F.4th 211, 245 n.17 (3d Cir. 2022) ("Reasonable strategic decision are not to be second-guessed under *Strickland*, even where those decisions may prove to be clearly faulty in hindsight."); *Smith v. Fisher*, No. CV 14-2935, 2016 WL 4366974, at *6 (E.D. Pa. Aug. 15, 2016) ("it is not our function on habeas review to determine whether counsel used the best trial strategy; rather, we only inquire whether counsel's strategy was objectively reasonable").

### 1.    Suppression Hearing

Here, the record supports the state courts' determination that Roberts made a strategic decision not to call the two "possibly unreliable witnesses" at the suppression hearing or move to reopen the hearing. *Dunlap*, 2016 WL 207616, at *3. The witness statements were allegedly

obtained by investigator Steven Kearney in November 2011 (DE 12-12 at 172–79 (witness statements)) and provided to Roberts on December 7, 2011 (DE 12-12 at 171–179 (cover letter from Kearney to Roberts)). The suppression hearing was conducted on January 19, 2012, and May 23, 2012. *Dunlap*, 2016 WL 207616, at *7; DE 11 and DE 11-1 (transcripts). The record demonstrates that Roberts made efforts to secure the testimony of the witnesses for the hearing, but they were "ducking" his subpoena; that "for whatever reason . . . their story ha[d] changed"; and that, once Roberts's investigator located one of the witnesses, that witness "was not very happy with cooperating." *Dunlap*, 2016 WL 207616, at *7.

The record also reveals that the trial judge was willing to allow Stewart to file any motions he deemed fit and was willing to reopen the suppression hearing. *Id*. at *1. In response to Roberts's request at a pretrial conference that Stewart have the right to file "whatever motions are appropriate at the earliest time," the judge acquiesced: "I'll tell you flat out I have never stopped any lawyer from filing motions ever. . . . I may not hear it but has [sic] every right to file a motion. We don't care what they are. Something that I get that has merit I don't know if I have any choice but to hear it." DE 10-3 at 3–4; *id.* at 6 (trial judge later in the conference: "Whatever matters are deemed appropriate by counsel this Court is always open to accept any filing."). At the suppression hearing, in response to Roberts's request for a one-week adjournment, the judge stated:

> The motion is done, subject to a request to be reopened based upon a further investigation and affidavits from these parties. And place on the record that should these affidavits and certifications come to me, I will be very inclined to reopen it for purposes of additional testimony. But at this stage, given the murky water from which this fish is drawn, I am not inclined to believe it's anything more than a guppy.  I just don't believe you're going to get anything from it. It seems to me that where we would have anonymous tips which lead to representations that have not come to fruition after all this time, the Court's left with the inference that the representations being made to Counsel are simply not accurate, but rather wishful thinking.

13

DE 11-1 at 99–100. Stewart, however, did not move to reopen the hearing, but instead pursued negotiating a plea agreement. DE 13 at 14. As the PCR judge found, Stewart's decision not to file any motions undermines Dunlap's argument that Roberts was ineffective. *Id.* at 14–16.

In light of these facts, it was not unreasonable for the state courts to conclude that Roberts reasonably believed that "the two (2) witnesses were not credible enough to take the stand, and for that reason, never petitioned the court to reopen the motion," and (2) "Stewart shared Roberts' view and for that reason, never petitioned the court to reopen the motion." *Dunlap*, 2018 WL 6816662, at *3 (quotations omitted); DE 13 at 13. Dunlap has not presented clear and convincing evidence to the contrary. *See Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (no habeas relief where state court found counsel employed strategy in not calling certain witnesses, Third Circuit found that "factual determination [to be] credible," and petitioner did not present "clear and convincing evidence to the contrary").

Thus, Dunlap has not overcome the presumption of reasonableness that attaches to Roberts' strategic decisions and the deference afforded to the state courts' factual determination that Roberts's decisions on this issue were strategic. *See Premo v. Moore*, 562 U.S. 115, 122 (2011) (when the *Strickland* analysis is combined with 28 U.S.C. § 2254(d), federal habeas courts' analysis is "doubly" deferential to both the state court and defense counsel); *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006) (counsel's strategic "choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity"); *Grant v. Wilson*, No. CV 04-1904, 2006 WL 8450189, at *10 (W.D. Pa. Mar. 15, 2006) ("A state court's findings of historical facts in analyzing an ineffective assistance of counsel claim are entitled to the presumption of correctness.") (citing *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993)).

Accordingly, because Roberts's decision not to call the witnesses to testify at the suppression hearing or move to reopen the hearing for the witnesses to testify could reasonably be considered strategically sound, I find that the state courts' conclusion that Dunlap failed to establish that Roberts's performance was deficient was not contrary to or an unreasonable application of the principles of *Strickland*. *See Reinert v. Larkin*, 211 F. Supp. 2d 589, 599 (E.D. Pa. 2002) ("The decision of whether or not to call a particular witness is a matter open to differences of opinion. Reinert has not cited any law to overcome the strong presumption that counsel's decision not to call Officer Martz was the result of sound trial strategy. I therefore cannot conclude that trial counsel's failure to call Officer Martz at the suppression hearing was objectively unreasonable.") (citations omitted); *see also Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989) (characterizing decision to call a witness as "precisely the type of strategic decision which *Strickland* protects from second-guessing"); *United States v. Garguilo*, 324 F.2d 795 (2d Cir. 1963) ("The advisability of calling particular witnesses . . . [is a matter] open to honest differences of opinion."); *Jordan v. Thompson*, No. 19-03928, 2020 WL 13526226, at *13 (S.D.N.Y. June 18, 2020) ("Defense counsel's decision not to call witnesses at the suppression hearing was a reasonable strategy. Moreover, the Court of Appeals has noted that this deference is especially appropriate where an attorney decides not to call an unfriendly witness."), *report and recommendation adopted*, 2022 WL 3328082 (S.D.N.Y. July 27, 2022).

Habeas relief on this claim will be denied.

    **2.**    **Motion to Dismiss the Indictment**

Dunlap argues that Roberts was ineffective for failing to preserve a right to challenge the denial of his motion to dismiss the indictment, and specifically the sufficiency of evidence supporting the charge of being a leader of narcotics trafficking. The state courts reasonably

15

found that Dunlap waived these claims. Even if Roberts was ineffective, however, Dunlap failed to establish prejudice. The record supports this determination.

As an initial matter, Dunlap's assertion that he "only learned on his direct appeal that trial counsel failed to preserve his claim challenging the indictment via the Appellate Division ruling denying relief" (DE 1-2 at 16) is belied by the record. During his plea proceedings, Dunlap was advised that he was giving up certain rights, including the right to appeal the denial of his motion to dismiss the indictment (and, thus, his challenge to the sufficiency of the evidence supporting the leadership charge). *Dunlap*, 2016 WL 207616, at *3 ("defendant was explicitly advised and acknowledged that his guilty plea constituted a waiver of the right to challenge any pretrial motion other than the motion to suppress evidence"). Specifically, Dunlap acknowledged on his plea form that he understood he was waiving his right to appeal the denial of all pretrial motions except the motion to suppress. DE 12-2 at 1. And at his plea hearing, Dunlap acknowledged that he understood the questions on the plea form; acknowledged that he was giving up certain rights as stated on the plea form; stated that he had no questions concerning his plea; asserted that his answers on the plea form were truthful; and stated that he was entering the plea voluntarily, that he had reviewed the form with Stewart, and that he understood everything in it. DE 12-1 at 8–12. In light of these facts, the state courts' finding that Dunlap waived claims related to the motion to dismiss the indictment, which included a challenge to the sufficiency of the evidence on the leadership charge, was not unreasonable. *See Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).

Even if Dunlap had not waived the claim, however, any challenge to the effectiveness of Roberts with respect to the plea agreement would be implausible, because the record reveals that Stewart, not Roberts, negotiated the plea agreement. DE 12-14 (D'Elia stated that Stewart called her with plea counter-offer); *Dunlap*, 2018 WL 6816662, at *4 ("The record clearly indicates that, despite the State's evidence against defendant, Stewart was able to negotiate a favorable plea for defendant."). Dunlap acknowledged at his plea hearing that he was satisfied with Stewart's performance. DE 12-1 at 12.

But set all that aside. Even if Dunlap had not waived the claims and even if counsel's performance was somehow deficient, the state courts reasonably determined that Dunlap failed to demonstrate prejudice.

First, Dunlap does not assert that but for Roberts's alleged deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.

Second, as the state courts found, there was no indication that the State would have agreed to a conditional plea that preserved Dunlap's right to appeal the denial of the motion to dismiss. *Dunlap*, 2016 WL 207616, at *3–4; DE 15–17. This finding is supported by Assistant Prosecutor D'Elia's certification, wherein she states that (1) Dunlap and two co-defendants "pled guilty on the eve of trial"; (2) "[d]ue to the Conspiracy count and the Accomplice Liability theory of this case, the State required all three guilty pleas to be contingent," as "[t]his case was stronger with the remaining defendants going to trial together"; and (3) "[t]he State would not have allowed any of the three remaining defendants to have entered into a conditional plea of any kind or allowed reservation of rights at this late date, except for the one that is printed on the plea form relating to suppression of physical evidence." DE 12-14 at 1; *see also* DE 12-1 at 11 (trial judge at plea hearing: "I've got 275 people coming tomorrow. So if you want a trial, you're

17

literally a day away."); 12-2 at 1 (plea form stating that appeal of a denial of a motion to suppress is not waived), 3 (plea agreement: "pleas for Dunlap, Bates & Newbill are contingent"). As to Dunlap specifically, D'Elia further stated as follows:

> This was anticipated to be a six to eight week trial and the State was prepared to go forward. The fact that these defense attorneys were able to negotiate a favorable plea for their clients at this late date was a testament to their negotiating skills. Johnel Dunlap was facing life in prison with a 25-year parole disqualifier on the Leader of Narcotics Trafficking Count alone, and we would never have dropped below the 30 years with a 15-year parole disqualifier. In fact, it was Kenyatta Stewart, Esq., who called me while I was in trial preparations and urged the State to stake said counter-offer. He confirmed this sentencing recommendation was approved by his client, Johnel Dunlap, before I would even take it back to Prosecutor Kaplan for his approval.

DE 12-14 at 1–2. Particularly in light of this evidence, a bare claim that counsel should have obtained a better offer cannot stand.

Third, the claim of prejudice cannot stand in light of the considerable benefit to Dunlap from this plea agreement, and the strong bargaining position of the prosecutor, given the mandatory life sentence. Under N.J.S.A. 2C:35-12, if convicted, Dunlap was facing a mandatory sentence of life imprisonment with 25 years of parole ineligibility, and "only through a plea agreement could the mandatory sentence be waived." *Dunlap*, 2018 WL 6816662, at *4; N.J.S.A. § 2C:35-12 ("Whenever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole . . . the court upon conviction shall impose the mandatory sentence . . . unless the defendant has pleaded guilty pursuant to a negotiated agreement . . . ."). In light of this clear benefit and D-Elia's representations, it was not unreasonable for the Appellate Division to find that there was no evidence suggesting that Dunlap would have "preferred to go to trial and face the mandatory life sentence or that he would have chosen to do so but for Roberts'

18

deficiencies." *Dunlap*, 2018 WL 6816662, at *4. Indeed, on this record, it would not have been rational for Dunlap to reject the offered plea. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (decision to reject plea must be rational under the circumstances to show prejudice) (citing). Thus, the state courts reasonably found that Dunlap failed to establish the prejudice prong of *Strickland* and its progeny.

For these reasons, the state courts' findings that Dunlap failed to make a prima facie showing of ineffectiveness of counsel was not contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Dunlap's habeas petition is denied.

## IV.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## V. CONCLUSION

For the foregoing reasons, Dunlap's petition is denied with prejudice and no certificate of appealability shall issue. An appropriate order follows.

DATED: January 31, 2023

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge